MUELLER, Respondent, vs. TOWN OF CAVOUR, Appellant.

*September 26 — October 12, 1900.*

*Taxation: Towns: Population: Statutes: Construction: Amendments: Limit on taxation: Town orders: Interest.*

1. Sec. 776, S. & B. Ann. Stats., provided that the electors at any annual town meeting should have power to raise money for town purposes, subject to the limitation as to the amount of highway taxes provided in sec. 1240. Ch. 293, Laws of 1895. amended sec. 776 by striking out the limitation referring to sec. 1240, and inserting a provision that the total tax levied for any one year should not exceed three per cent. of the assessed valuation of the taxable property of the town. Ch. 385, Laws of 1895, provided that the amount of highway taxes to be assessed in any town for any one year should remain as provided by said sec. 1240. *Held,* that the limitations of sec. 1240 remained unaffected by the change in sec. 776.

2. Sec. 1240, Stats. 1898, provides that the supervisors shall assess not less than one nor more than seven mills on the dollar on the valuation of taxable property of the town, for highway purposes, and any additional amount, not exceeding fifteen mills on the dollar of such valuation, which shall be ordered at the next preceding annual town meeting, but that no town containing a population of less than 500 shall levy or collect in any one year a highway tax of more than $1,000, and that no town having two or more congressional townships shall levy or collect a tax, exclusive of the

mill tax thereinbefore authorized, of more than $2,000 in any one year. *Held*, that a town containing less than 500 inhabitants had no power to levy or collect a highway tax of more than $1,000 in any one year, though such town contained two congressional townships; and that warrants for work done on the highways, issued after that sum had been expended, were void.

3. Town orders do not bear interest unless the electors of the town, by vote taken pursuant to the authority of ch. 325, Laws of 1899, so declare.

APPEAL from a judgment of the circuit court for Forest county: JOHN GOODLAND, Circuit Judge. *Reversed.*

This is an action upon 176 town orders. The facts were stipulated, and were, in substance, as follows: On the 7th of April, 1896, and for some years prior thereto, the town of Pelican Lake, Forest county, was a duly organized town, containing less than 500 inhabitants, and having a territory of more than two congressional townships. At the annual town meeting of said town held April 7, 1896, the electors voted a highway tax of $1,000, and in form voted to authorize the town board of supervisors to levy a tax for highway purposes, in addition to said $1,000, of fifteen mills upon the dollar upon the assessed valuation of the town. Thereafter the town board of supervisors in form levied an additional highway tax of nine mills upon the dollar, making a total sum of $4,330 of highway taxes levied and collected in the town for that year. During that year work was done upon the highways, and town orders issued therefor amounting in all to $4,331.63. Among the orders so issued were a part of the 176 orders sued on in this action, which were duly assigned to the plaintiff before the commencement of this action. A part of the highway orders held by plaintiff and sued on in this action were issued for work done before the sum of $1,000 had been expended upon the highway and a part afterwards. On the 26th day of September, 1896, the plaintiff presented the orders for payment to the town treasurer, and payment was refused.

On the 21st day of April, 1897, the town of Pelican Lake was dissolved by virtue of ch. 278, Laws of 1897, and the town of *Cavour* was created, comprising most of the territory of the town of Pelican Lake, and succeeding to all of the rights and liabilities of said town of Pelican Lake. On the 10th of June, 1897, the plaintiff filed his claim in the office of the town clerk of the town of *Cavour* for presentation to the board of audit, but ten of the orders sued upon in this action were not included in said claim. It was stipulated that all the orders were valid except the highway orders issued after $1,000 had been expended and those which had never been presented to the board of audit.

Upon these facts, trial by jury was waived, and the court held that all the orders were valid except the ten orders which had not been presented to the board of audit, and allowed interest to be recovered at the legal rate from the time of such presentation to the board of audit. From judgment in accordance with these findings, the defendant town appealed.

For the appellant there was a brief by *Greene, Fairchild, North & Parker,* and oral argument by *J. R. North.*

For the respondent the cause was submitted on the brief of *H. B. Schwin.*

WINSLOW, J. The amount which the town of Pelican Lake could legally spend for highway purposes during the year was limited to the amount which it could legally raise for that purpose by taxation. *Webster v. Douglas Co.* 102 Wis. 181; sec. 823, S. & B. Ann. Stats. So the question upon which the case must turn is whether the town was authorized to levy more than $1,000 tax for highway purposes in the year 1896. The claim of appellant is that because the town contained less than 500 inhabitants it could only raise a highway tax of $1,000, while the respondent's contention is that because the town contained a territory of

Mueller vs. Town of Cavour.

more than two congressional townships it could raise by taxation for highways $2,000 and seven mills on the dollar of its assessed valuation of property. The question is one of construction of the various statutes bearing on the subject, and these statutes will now be examined.

Prior to the passage of ch. 293, Laws of 1895, the material statutory provisions on the subject were as follows: Sec. 776, S. & B. Ann. Stats., provided, among other things, that the electors, at the annual town meeting, should have power " to vote to raise money for the repair of roads and bridges or either; for the support of the poor and for the defraying of all other proper charges and expenses of the town, subject, however, to the limitation as to the amount of highway taxes provided in section twelve hundred and forty." Sec. 1240 of the same statute provided, in substance, that the supervisors should assess a poll tax for highway purposes on every adult male inhabitant, with certain exceptions, and proceeded as follows: " The residue of the highway tax, to an amount of not less than one nor more than seven mills on the dollar, shall be assessed on the valuation of real and personal property in each district, but the supervisors in the several towns of this state shall assess any amount of highway tax, additional to the amount above authorized, which shall be ordered to be assessed at the next preceding annual town meeting, not exceeding fifteen mills on the dollar of such valuation. But no town containing a population of less than 500 inhabitants shall hereafter levy or collect in any one year a highway tax of more than $1,000, including the amount of money that may be voted at any special or general town meeting and the mill tax herein authorized to be levied by the supervisors. And no town having two congressional townships or more, shall levy or collect a tax exclusive of the mill tax hereinbefore authorized, for more than $2,000 in any one year."

Thus, it appears that the limitations provided in sec. 1240

were by express words imported into sec. 776, and, so far as applicable, were as much a part of the last-named section as if written out at length therein.    One of these limitations was a sweeping limitation that "no town" containing less than 500 inhabitants should have power to levy or collect a highway tax of more than $1,000 in any one year.

While the law stood thus, it is difficult to see how it could be claimed that the $1,000 limitation did not apply to every town in the state continuing less than 500 inhabitants, just as its plain terms indicate, and regardless of the question of extent of territory.    It is true that there was a subsequent limitation to the effect that no town having two or more congressional townships should levy a highway tax exclusive of the mill tax of more than $2,000 in any one year, but this was an entirely independent provision.    It was not in the form of a proviso or exception to the previous limitation.    A little reflection makes its object manifest.    In a town containing great territory, and consequently a very large amount of assessable property, owned perhaps by nonresidents, but also containing only a few more than 500 inhabitants, a highway tax of fifteen mills would raise an excessive amount, and consequently an additional limitation, not, however, so drastic as the previous limitation upon towns of less than 500 inhabitants, was necessary, and this additional or cumulative limitation was provided for such towns.    This seems clearly to be the true meaning and intent of the provisions above noted, and such was practically the construction placed upon them in the case of *C. N. Nelson Lumber Co. v. Loraine* (C. C.), 24 Fed. Rep. 456.    The case of *Sage v. Fifield*, 68 Wis. 546, is cited as opposed to this construction, but the question now being considered was not raised or decided in that case.    There was no question there involved as to the powers of a town containing less than 500 inhabitants.    But even conceding this to be the proper construction of the laws as they stood prior to 1895, it is claimed that the $1,000

limitation was, in effect, removed by the passage of ch. 293 of the laws of that year.   This last-named chapter amended sec. 776, above named, by striking out all after the word "town," and inserting instead the words, "provided, however, that the total taxes levied in any town in this state for any one year for all purposes including taxes for schools whether under the district or township system  .  .  .   shall not exceed three per centum of the total assessed valuation of such town.  ,  .  ."   Thus the direct reiteration of the limitations in sec. 1240 was eliminated from sec. 776, but there was no attempt there nor since to repeal or materially change the provisions of sec. 1240.   The last-named section was and is the section intended to govern the whole subject of highway taxes in towns.   It was and is a law directed to this particular subject, and, under familiar principles, must control general legislation, even in cases of apparent conflict. But there was no conflict.   The legislature evidently desired to place a limitation upon the power of taxation by a town for all purposes, and the natural place to insert it was manifestly in the body of sec. 776.   To place the general limitation at the end of the section in addition to the highway limitation would be clumsy, to say the least, and, such last-named limitation being specially provided elsewhere, it was deemed unnecessary to retain it here.   But, if any further argument were needed to show that the intent of the legislature was not to repeal or affect the limitations of sec. 1240, it would be found in ch. 385, Laws of 1895, approved on the same day as ch. 293, in which it is enacted, that "the amount of highway taxes that may be assessed in any town for any one year and the manner of making such assessment shall remain the same as now provided for by sec. 1240, R. S., and the amendments thereto.  .  .  ."   The conclusion is inevitable that the limitations of sec. 1240 remain unaffected by the change in sec. 776, and therefore that the town of Pelican Lake, being a town of less than 500 inhabitants, could

Mueller vs. Town of Cavour.

raise no more than $1,000 for highway purposes in the year 1896. The town orders, therefore, which were issued after that sum had been expended were void.

Interest was allowed by the trial court on all orders from the time of the filing of the plaintiff's claim with the town clerk. This was error. It is a general principle of law that town orders do not bear interest, in the absence of statute to that effect. *Bigelow v. Washburn*, 98 Wis. 553. It is provided by statute that county orders shall bear no interest. Sec. 686, Stats. 1898. Under this statute, it has been held that no interest could be recovered on county orders, even after presentment for payment. *Alexander v. Oneida Co.* 76 Wis. 56. In the case of a town order, the inhibition against the running of interest is by rule of common law; in the case of a county order, it is by statute; but the effect is manifestly the same. The legislature has recognized the necessity of legislative action in order to justify the payment of interest upon a town order by the passage of ch. 325 of the laws of 1899, authorizing the electors of a town, by vote, to declare whether town orders shall bear interest, and at what rate.

*By the Court.*— Judgment reversed, and action remanded with directions to enter judgment for the plaintiff for the amount of the orders which were stipulated to be valid, without interest.

CASSODAY, C. J., took no part.