ERNEST C. KEPPLER, Chairman, Committee on Senate Organization
Section 149 (n) of Assembly Bill 300, 1973, created four subsections of sec. 20.866 (2), Stats., which were unrelated except as to methods of funding. Subsection (us) provided:
"20.866 (2) (us) TRANSPORTATION; STATE TRUNK HIGHWAY IMPROVEMENTS. As a continuing appropriation from the capital improvement fund, the amounts in the schedule to construct, reconstruct and resurface state trunk highway facilities as provided by s. 84.51 (3). The state may contract public debt in an amount not to exceed $25,000,000 for this purpose."
The Governor crossed out the numeral "2" and marked the section "vetoed in part." There is no question as to the Governor's intention. In his 18-page veto message dated August 2, 1973 (Assembly Journal, August 8, 1973, p. 2413), he stated that he had partially vetoed all except the "$5 million portion of the bond authorization which has been retained" and set forth his reasons.
These facts prompt you to ask, on behalf of the Senate Committee on Organization, my opinion on the extent of the Governor's power under Art. V, sec. 10, Wis. Const., to approve appropriation bills in whole or in part.
Article V, sec. 10, Wis. Const., in material part, provides: *Page 239 
"* * * Appropriation bills may be approved in whole or in part by the Governor, and the part approved shall be become law, and the part objected to shall be returned in the same manner as provided for other bills. * * *"
This provision confers upon the Governor the authority toapprove or reject, in whole of in part, appropriation bills. It does not grant to the Governor the authority to alter a separable part of an appropriation bill. It is immaterial whether the alteration is accomplished by writing in a different figure as opposed to altering the figure established by the legislation by use of a slash or other mark.
The purpose of the partial veto power was described in State exrel. Martin v. Zimmerman (1940), 233 Wis. 442, 447-448,289 N.W. 662:
"* * * Its purpose was to prevent, if possible, the adoption or omnibus appropriation bills, logrolling, the practice of jumbling together in one act inconsistent subjects in order to force a passage by uniting minorities with different interests when the particular provisions could not pass on their separate merits, with riders of objectionable legislation attached to general appropriation bills in order to force the governor to veto the entire bill and thus stop the wheels of government or approve the obnoxious act. Very definite evils were inherent in the lawmaking processes in connection with appropriation measures. Both the legislature and the people deemed it advisable to confer power upon the governor to approve appropriation bills in whole or inpart. * * *" (Emphasis added.)
The partial veto power can be exercised as to any separable part of an appropriation bill, but the remainder must constitute a complete and workable law. State ex rel. Martin v. Zimmerman,supra, p. 450 and State ex rel. Finnegan v. Dammann (1936),220 Wis. 143, 146, 264 N.W. 622. The corollary is that the part objected to must constitute a complete and workable piece of legislation. If the "part objected to" does not constitute a workable law, it cannot "be returned in the same manner as provided for other bills." In other words, the Governor has the power to object to part of an appropriation bill, but the legislature has the power, when the part rejected is returned, to consider whether it will override as to the *Page 240 
part rejected. The legislature must have a workable part in order to exercise this authority.
The portion of the appropriation bill under consideration involves bonding. Because the authority to bond must be absolutely free from doubt and because the legislature now is about to consider the parts of the budget bill objected to by the Governor, it is appropriate for me to advise the legislature on the effect of the Governor's action with respect to subsec. (us). Since the Governor lacks authority to alter a separable part of an appropriation bill and since it is clear the Governor did not approve this subsection, I conclude that the Governor has objected and that subsec. (us) of sec. 149 (n) of Assembly Bill 300, 1973, must "be returned in the same manner as provided for other bills." In other words the entire 25 million bonding measure is returned to the legislature for reconsideration. Subsection (us) has not been approved, and therefore has not become law. Consequently, no bonding authority exists pursuant to the legislation under consideration. The legislature now may consider whether to override the Governor's partial veto or to submit to the Governor, in the form of a new and separate bill, a different level of bonding authority.
RWW:WHW