CAL W. KORNSTEDT, Corporation Counsel Dane County
You ask three questions relating to the recording of legal documents containing restrictive covenants by the register of deeds in your county. Your first two questions are as follows:
 1. Does the county board have the authority to direct the register of deeds to refuse to accept for recording documents which impose restrictive covenants which are in violation of law?
 2. Does the county board have the authority to direct the register of deeds to place notices on liber volumes and on copies of real estate documents, calling the public's attention to the possibility that the volumes or copies may contain illegal restrictive covenants which are unenforceable as a matter of law?
In my opinion, the answer to both questions is no.
It is well settled that "statutory powers and duties conferred upon a county officer cannot be narrowed, enlarged, or taken away by a county board unless the legislature has authorized such action." Harbick v. Marinette County, 138 Wis.2d 172, 179,405 N.W.2d 724 (Ct.App. 1987). See also Reichert v. MilwaukeeCounty, 159 Wis. 25, 35, 150 N.W. 401 (1914); 24 Op. Att'y Gen. 78, 80 (1935); 14 Op. Att'y Gen. 590 (1925). Moreover, in 77 Op. Att'y Gen. 113, 115 (1988), I concluded that "neither the various elective county officers nor their constitutional or statutory duties, functions and authority can be abolished, consolidated or altered" under section 59.025, Stats., the county administrative home rule statute.
Given this legal backdrop, the only possible source of authority for a county board to enact ordinances affecting the register of *Page 263 
deeds of the kind in question is section 66.432, which permits counties to enact fair housing ordinances forbidding discrimination of the type specified in the state fair housing act, section 101.22, including categories in addition to those enumerated in section 101.22(1m)(as), absent legislative intent to the contrary. See generally 74 Op. Att'y Gen. 234 (1985).
Section 101.22 provides in part as follows:
 (1m) DEFINITIONS. In this section unless the context requires otherwise:
 (as) "Discriminate" and "discrimination" mean to segregate, separate, exclude or treat any person or class of persons unequally because of sex, race, color, handicap, sexual orientation as defined in s. 111.32(13m), religion, national origin, sex or marital status of the person maintaining a household, lawful source of income, age or ancestry. It is intended that the factors set forth herein shall be the sole bases for prohibiting discrimination.
. . . .
 (2) DISCRIMINATION PROHIBITED. It is unlawful for any person to discriminate:
 (a) By refusing to sell, lease, finance or contract to construct housing or by refusing to discuss the terms thereof.
 (b) By refusing to permit inspection or exacting different or more stringent price, terms or conditions for the sale, lease, financing or rental of housing.
 (c) By refusing to finance or sell an unimproved residential lot or to construct a home or residence upon such lot.
 (d) By publishing, circulating, issuing or displaying, or causing to be published, circulated, issued or displayed, any communication, notice, advertisement or sign in connection with the sale, financing, lease or rental of housing, which states or indicates any discrimination in connection with housing.
Unless the italicized language in section 101.22(2)(d) authorizes the enactment of ordinances of the kind described in your inquiry, it is immaterial that a county has authority to prohibit categories of discrimination in addition to those enumerated in section 101.22(1m)(as). *Page 264 
In construing section 101.22(2)(d), I am aware that our courts "look to the federal courts for interpretive assistance when the state law is modeled after a federal statute." Marriage ofSchinner v. Schinner, 143 Wis.2d 81, 91, 420 N.W.2d 381 (Ct. App. 1988). I am also aware that in Mayers v. Ridley, 465 F.2d 630
(D.C. Cir. 1972) (en banc), the court held that the District of Columbia recorder of deeds violated the following portion of the federal Fair Housing Act by accepting deeds containing illegal restrictive covenants for recording:
[I]t shall be unlawful —
. . . .
 (c) To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, or national origin, or an intention to make any such preference, limitation, or discrimination.
42 U.S.C. § 3604 (1974).
Noting that the recorder had an affirmative duty under local regulations to refuse to record "`any instrument which shall not be executed and acknowledged agreeably to law,'" Mayers,465 F.2d at 636, the court held that the recorder "make[s], print[s], [and] publish[es]" discriminatory notices or statements by accepting such documents for recording. Mayers, 465 F.2d at 633.
Two factors lead me to conclude that the construction of the federal Fair Housing Act adopted in Mayers is inapplicable to section 101.22(2)(d). First, the state enactment antedates the federal enactment. See ch. 439, sec. 4, Laws of 1965. For that reason, the rule of construction cited in Schinner is inapplicable, and I am therefore not required to attach any particular weight to any federal court decision construing the federal Fair Housing Act.
Second, absent any other legal prohibition to the contrary, in Wisconsin the register of deeds has a clear and absolute ministerial duty to record documents affecting title to real estate. Section 706.05(1) provides that "[e]very conveyance, and every other instrument which affects title to land in this state, shall be entitled to record in the office of the register of deeds of each county in which land affected thereby may be." Thus, legal instruments which are in *Page 265 
compliance with sections 59.51(1), 59.516 and other state statutes delimiting the recordability of specific documents must be recorded by the register of deeds. See 48 Op. Att'y Gen. 54, 56 (1959); 15 Op. Att'y Gen. 72, 74 (1925). The discretion of the register of deeds is therefore limited to ascertaining whether the proffered documents are in compliance with such statutes. 34 Op. Att'y Gen. 181 (1945); 6 Op. Att'y Gen. 140 (1917).
Given these circumstances, it is my considered opinion that the courts of this state would construe section 101.22(2)(d) in a manner similar to that employed by the court in Woodward v.Bowers, 630 F. Supp. 1205 (M.D. Pa. 1986). In that case, after first noting that the issuance of two concurring and two dissenting opinions in Mayers resulted in the reversal of the district court's decision in that case, the court held that the rationale of the en banc decision in Mayers may not be appropriate in those states where the register of deeds is a ministerial officer. For that reason and for the other reasons indicated, it is my opinion that section 101.22(2)(d) does not apply in any way whatsoever to the process of recording real estate documents. Section 66.432 therefore does not authorize a county board to enact ordinances prohibiting the recording of documents containing restrictive covenants by the register of deeds or requiring the register of deeds to place notices on liber volumes and copies of real estate documents, directing the public's attention to the possibility that such covenants may be legally unenforceable.
Your third question is as follows: "Is there any difference between the county board's authority as between restrictive covenants which are violative of federal law and those which are violative of county ordinances the latter of which prohibit additional categories of restrictive covenants?"
Since I have already indicated that a county board lacks statutory authority to enact ordinances directing the register of deeds to place notices concerning the legality of restrictive covenants or to refuse to record documents containing restrictive covenants of any kind, the answer to this question is no.
Your inquiry indicates, however, that the proposed ordinance may represent an effort by the county board to achieve compliance with the federal Fair Housing Act. While it would be inappropriate for me to determine the applicability of or otherwise construe federal statutes enforced exclusively by federal agencies, see 77 Op. *Page 266 
Att'y Gen. 214 n. 1 (1988), section 59.01(1) does authorize a county "to do such . . . acts as are necessary and proper to the exercise of the powers and privileges granted and the performance of the legal duties charged upon it." In addition, section59.51(15) requires a register of deeds to "[p]erform all other duties required of him by law." Thus, the county board and the register of deeds each have, within the scope of their respective state constitutional and statutory authority, an independent obligation to ensure that they are in compliance with applicable state and federal statutes. However, the method of compliance contemplated by the county board in this instance is not within the scope of its state constitutional and statutory authority.
DJH:FTC *Page 267